Lynch exhibited his hill against Johnson, alleging that in the year If 98, he, with a certain John Blanton, purchased from Johnson, all the lands which Johnson had a right to, in the then county of Mason, of first and second rate, (excluding out of the first rate* 2000 acres, which Johnson reserved to himself, to be laid otf in surveys of four or five hundred acres;) that Lynch and Blanton were to investigate the titles, and to pay at the rate of one dollar per acre, with interest, for what lands should be saved, at the end of five years, which was allowed for the investigation; that a second contract was made by Lynch for himself and Nicholas Lewis, in which they purchased the 2000 acres first reserved by Johnson ; for which they were to give two dollars per acre, and Lewis afterwards gave up the benefit of his purchase to John Adair j that Lynch afterwards, and in his own name, for the benefit of himself and Adair, purchased all the lands left, belonging to Johnson, which should be below second rate, by which they became entitled to the whole, and for this last purchase, paid down two or three horses, so that Lynch and Blanton became entitled to all the first and second rate lands except the reserved two thousand acres, and Lynch and Adair were entitled to the two thousand acres reserved in the first contract, an,d the inferior lands ; all which was reduced to writing in the form of articles of agreement; that at the time the purchase was first made by Lynch and Blanton, they were strangers in the country, and knew nothing of the claims except what they derived from the information of Johnson, who was to furnish the *100 necessary papers, to enable them to pursue the invest tigation of the titles. But these papers were not fur, nished for two or three years afterwards, and the ln~ vestigation was not yet complete, and consequently the sum not yet due. He further charges, that notwithstanding this impediment, he, Lynch, had made large payments to Johnson, and others, hy his direction, to near the.amuunt of eight thousand dollars, including what was paid for the two thousand reserved acres; that for that quantity, Lynch had given his bond for one thousand dollars ; that although the money was not to be paid unless the land was saved, he* Lynch, supposing that some would be saved, made these payments, by which he considered the bond of one thousand dollars discharged; that attempts had been mads hy Adair to procure the papers and have the two thousand acres laid off for the purpose of sale hut the papers could not be produced, and that they bad received a report, that so much as two thousand acres of the quality reserved, could not he had ; that Johnson was insolvent and the titles in many instances doubtful and had, and that if compelled to pay the money, he would be much injured; that Johnson had commenced a suit at common law, and obtained judgment for the one thousand dollars. He prays an injunction, and that Johnson might he decreed to receive no more money until the titles should be investigateds or until he gave bond and security to indemnify against his insolvency, and for further general relief.
Johnson answered, admitting the first contract, and alleges, that Lynch was to investigate at his own proper costs, in five years, and then pay for what was saved, and exhibits the written contract. He alleges that the lands to which he laid claim in the counties of Masón and Fleming, were about the quantity of 20,000 acres, all as locator, for which he held bonds on the several proprietors of the entries, as his only evidence of title, which he was bound to transfer, and which, he alleges, he did transfer to the said Lynch on the earliest request. He also admits, that Lynch, for him. self a nil Adair, purchased all the lands below second rate, for three horses worth three hundred dollars, Which he had paid ; and also, that in negroes and a, bond on some other person, he had paid the one thou, sand dollars to he paid down on the first contract. He *101 also admits the sale of the two thousand acres reserved, for four thousand dollars, in four bonds of one thousand dollars each, two of which had been paid. On the third, the judgment at law was-obtained, and the fourth, he had in his possession. He alleges that the two first of these bonds were discharged by a con. veyance to him of a tract of seven hundred acres of land in Shelby, and that on the fourth, was a credit of two hundred and seventy-five dollars paid by Adair. He admits also, a payment of two thousand seven hun. dred dollars in another tract of land conveyed to him, of nine hundred acres, at three dollars per-acre, which, with the one thousand dollars to be paid down, was all he had received,on the first contract. .
He denies he had withheld any papers; alleges, that although he was not bound by his contract, 3 et he had went on the ground with proper maps, with an agent of the complainant, and shewed the claims, or some of them; but that the agent left the ground before the examination was completed, because their accommodation was bad. He alleges that the entries are good and titles valid; that the contract was a good one on the part of the complainant, Lynch, to get at least fourteen or fifteen thousand acres of land, most of it, of the first quality, of the value of five dollars per acre, and denies any knowledge of the said Lynch having investigated any of the claims, and insists, he is under no responsibility whatever. He alleges, that a strong inducement to make the contract, was for the purpose ofgetting clear of the trouble of investigation, being willing to trust to the superior talents of Lynch, in that business.
The court below, on motion, dissolved the injunction, andón appeal from the order of dissolution, this court affirmed it. Some time after the return of the opinion of this court, to that, the original bill being still depending, Lynch, united with Adair and the heirs of Blanton, he having departed this life, filed their amended bill and prayed that the injunction might be reinstated on the equity set forth in the original and amendment, which was granted by the court below. The amended bill states, that at the time of the first contract with Lynch and Blanton, Johnson represented that he was entitled to one fourth part of #«ndry large, valuable tracts of land in the counties of *102 Mason and Fleming by sundry contracts with the pro* prietors, and that the investigation of these titles, Was what was intended by the contract; that among others, he named a claim of 45,987§ acres in the namo of John Smith and sundry others, and also, another of 5,067f acres in the name of William Ward, and that there had been paid to Johnson, $8,527 15, and that Johnson had failed on his part in the following respects: First, he was applied to and specially requested to assign to them the obligations on the proprietors, which, he alleged, he held, under the first contract; but that he utterly failed and neyer did assign qver any of them. Secondly, lie was applied too specially to convey the 2000 acres purchased by Lynch and Adair, am! fails d, and was separately urged by Adair to convey 1000 acres thereof, which he was to have, and had refused. Thirdly, the said Johnson had wholly disabled himself from complying with his contract as regards the 45,987| acre tract by having previously sold it to William Ward.' They further charge, that by these failures of Johnson, they had been prevented from enquiring into, or investigating the titles, and that from the investigation they had made, he, said Johnson, had no good title to any land which would enable him to convey the 2000 acres of first rate reserved land, and that the whole, If he had complied with his contract, to which he would have been entitled, would have been very small and of inferior value. They pray that the defendant below may be compelled to carry his contract into effect so far as he should shew himself able, in any material part, and that it be rescinded for the residue, and for such further relief as equity may require and allow.
The defendant, Johnson, inbis answer to this amendment, admits that the tract of 45,987| acres was included, and he denies that he had eversold it to Ward. He denies ever having any interest in the tract of 5,067i acres in the name of Ward, or that he ever sold part of it. He denies that all the payments charged to have been made in the amended bill were made on these contracts, but charges,, that a large proportion of the payments charged in the amended bill were made iii consideration of a-large tract of« 20,000 acres situate pu the South Fork of Big Sandy, patented in his own name and that of Abraham Maury, a moiety of which *103 be had sold to Lynch ; for which a considerable part óf the payments were made as claimed in the bill against these contracts for lands in Mason and Fleming. He denies in general terms that he has failed to comply with his contract in whole or in part; but alleges that if he has failed in any part, that failure was super-induced by the complainant’s failure. He states that they had wholly failed to investigate the titles or to make choice of the 2000 acres reserved, of which they were to have choice, as he had it in the reservation, whereby it was out of his power to convey the equitable right as locator, which was all the title lie had or was bound to make, as would appear by bis bond. He avers, that immediately after making of the contract, he put into the hands of the complainants, all the Bonds which he held on the patentees, together with the article of agreement entered into with William Ward, who was a partner in Locating and entitled to one fourth. He denies that they investigated any of the claims or took any step-towards it. But he alleges, that they had sold á great part of the lands clear ef dispute, leaving the rest unsettled, although the elder patent was in their favor. He admits that Lynch applied to him, to assign the bonds, but it was since the decree of this court affirming the dissolution of the first injunction, and he refused, believing he had fully complied with every part of his contract. He admits that Adair had applied for a conveyance of 1000 acres, part of the 2000 reserved, but denies that he refused, if the opposite party would provide a deed, and give satisfactory assurance that said 1000 acres was part of Lynch’s choice of the 2000» He denies that any investigation had taken place, or that any attempt was made, except sending their agent to the lands, seven or eight years after the contract, as detailed in his original answer.
2. We have at first had some hesitation on the point whether Nicholas Lewis ought not to have been made a party. But upon discovering that his name is un. known in any written contract, and the bill is the only evidence of his interest, and the same charge shews that his interest is extinguished by surrendering it to Adair, it was competent for him in a contract for lands to surrender by words what he had gotten by *104 words; we do not therefore apprehend that he is’ a rfe’ cessary party.
Contracts separate and distinct in partes, time and terms, may-bé -ótnibinediii ihe same bill if all the contracts were made with the same individual respecting the same land, and whatever of the land may be excluded from one of the ' contract” will be included in the other.
uncler&1'" takes to investigaie andthe'eon tract is silent respecting furnishing entries^'surveys and patents necesinvesthra-6 tion, the son undertakmg the Inlex. pense,
*104 3. Relief lias also been objected to, on the ground that the contracts set up are separate and distinct, in parties, time and terms. It is admitted as a general rule governing courts of chancery, that separate contracts cannot be combined in one bill. But when it is recollected that these contracts are made with the same individual with respect to the same subject matter, and that each is only distinguished from the rest by the shades of difference existing between the rates of land, and that one must include what the other excludes, and what is included or excluded must be ascertained in one before another operates on the subject, they form a sound exception to the rule and may be blended in one bill. The case of Parberry’s heirs vs. Gorham, &c. 3 Bibb 107, is as strong a case as the present, and fully warrants the junction ol these par. ties and contracts in the same suit.
As to the last contract with regard to all the lands below second rate, there is no writing touching it, filed. But its existence is fully agreed between bill and answer, and its payment is also fully admitted, and is not included in the list of payments charged by the parties in their amended bill. Against this, there is no complaint, exceptthat Johnson has not assigned so much of his title to the complainants below. There is no reason for setting it aside, but it ought to be as. certained in the assessment, or estimate hereafter directed. It must include all the land below second rate, and Johnson must be decreed to assign or con. Vey his equitable titles to so much accordingly.
4. The first contract made with Lynch and Blan. ^011’ includes all the land first and second rate, except 2000 acres, the reserved choice of Johnson, and if there be none to fill that choice, this contract must in. cJutie the whole. As to this, there is a considerable complaint that Johnson did not furnish the necessary papers to enablethe complainants to investigate. What these papers were, which were refused, we are not told. As to the bonds on the proprietors, it is evi. dent, they were delivered by Johnson to them, as most, if not all of them are filed in the cause. As to surveys and patents, they were as accessible Lynch and Blanton, who had engaged to investí, *105 gate these lands as they were to Johnson,' and procur. ing copies of them, evidently belonged to those who were to investigate, Johnson admits that he has refused to assign these bonds. But it is evident, that the complainants first took them without assignments, and it was no doubt the full understanding of the par. tics that Johnson held but an equity of one fourth each tract, and this equity he transferred by his writ ten contract filed in the cause. We cannot, therefore, conceive, that he was bound to do more than he had done at first, which satisfied the parties theu; or that his refusing to make an assignment on the bonds af terwards, furnishes any ground for vacating this con tract. It is clear from this contract, that Lynch and Blanton were to proceed by investigation, and the quantity saved in the result of this investigation, was to.be paid for at one dollar per acre. It is true, there might be some difficulty in investigating, where they possessed the equity only of one undivided fourth, But of this difficulty the complainants were apprized, when they contracted, and still bound themselves to do so. The burden then, of relieving them from pay ing for what could not bo obtained, rested upon them, selves. and they ought to have shewn that they had done so, or that the lands were in such a hopeless sit uation, that an investigation would have been wholly nugatory and useless, before they could be from the payment. Instead of doing this, they have produced the depositions of t wo individuals, who give it as their opinion that very little can be saved. By the opinions of these men the contract cannot be. tes. ted, while the adjudication of a court of competent ju. risdiction, or the production of the title papers, con. trasted with an exhibition of the interfering claims, with proofof their validity, would have furnished us with far better evidence, by which to adjust this'contract. As they have failed to do this, they have furnished no ground for setting this contract aside, or to excuse them from being charged in this contract, with all the lands of first and second rate, except 2000 acres first rate, at the price of one dollar per acre.
* holjs titie Ponds for the conveyance equita- * bk; interest in them by “tides ot a|nd delivers the title bonds which bv^h^ptav chaser with, out assign-men'¡,,1<he' cannoTafterwards avoid perfn-™“cü£<j¡¡ehis contract on >he ground j^dswere not assigned,
A compLtejur.suiction of contract for land to enforce or measure its contents in favour of either party who shall ap¡piy.
*105 5. But while it is conceded that the court below did not, err in retusing to set aside this contract, it does not thence’follow. that it ought to have refused any relief. This is a contract for land, and as such, a courta *106 of chancery had complete jurisdiction to enforce, or measure its contents in favor of either , party who should apply. And although there was hot a necessity of applying for the purpose of enforcing it, yet there wqs a necessity for ascertaining its extent. The original quantity of land sold, including the different rates and qualities was somewhat uncertain; the quantity of first and second rate, after deducting two thousand acres first rate, and all below secoud rate, rendered its extent .still more uncertain. Tt is clear, that the complainants had made large payments, contended to be sufficient to cover the whole, and the testimony of the witnesses strongly conduced to shew, that such was the fact. Under such circumstances, the court below ought not to have dismissed the bill.
Commission ars directed to beappointed to as certain the-, qtian titv o1' land and tlxeir mode of proceeding.
Commissioners ought to be appointed, who, upon their view, and upon such evidence as to them may be adduced, should be directed to ascertain the quantity of first and second rale land, exclusive of 2000 acres, if so much there be, in the different tracts, which will appertain to the complainants under Johnson’s bonds, leaving one fourth for Ward and one half for the proprietors, in each tract, of equal quality. By this estimate, the true quantity for which Lynch and Blanton were hound to pay under this contract may be ascertained and the contract be defined, so that it will clearly appear whether the whole contract is discharged by the payments made. In making this estimate, these commissioners ought to take the bonds from the several proprietors to Johnson, filed, and from them take the tracts located and patented in the names of these proprietors, in the county of Mason, as its boundary stood on the 24th of \ugust 1796, excluding all lands located in the names of these proprietors, for which patents have not issued, or which have issued on the same warrants in the names of others, as it cannot be supposed 'hat Lynch and Blanton, at the time of the contract, intended to take lands for which a patent was not obiained,. or that they are bound to take such, or any, the title of which is invested in strangers to the obligations held by Johnson. In fixing the rates of these lands, the fu st and second rate lands in the cou.fíy on the aforesaid day, mast be taken as the criterion. A:-'to file tract of upwards of 45.000 acres mentioned in the bill and answer, as Johnson has de *107 Mied the sale of it to Ward, and no testimony is ad. duced sufficient to overturn the answer on this point, it must be taken into the estimate. By this mode of adjusting this contract, the resuit will be probably ve, ry different from that produced by the decree of the court below.
a contract tor the sale |°g^ra^es chosenbythe vendee out ed bv the vender, the the°1 first act viz. shi-w the filed to vacate the '•oatract on derhadnot” land of that description ^asr^a. able to comply with his drijefon the. vender,
6. As to the last contract for 2000 acres of first rate land made by Lynch and Adair, to be chosen in tracts of four or five hundred acres, it is not so free of difficulty on the side of the defendant in error. the remaining two. This was made on the 9t.hof Jan-nary 179H, not two years after the first, and binds Johnson, to convey upon request or in a reasonable time thereafter. Johnson in this contract did not part with the equity, which he held by bond on the propri. etors, which was no doubt the title he bound himself to convey by his bond. It is true, Johnson excuses himself from a breach in not conveying, by alleging that they-had made no choice, and prepared no and that he would have been justifiable in failing, as the opposite party had failed to pay the purchase money. Whether this is sufficient to excuse him for failing to convey, we will not now enquire. . For it is certain, that it cannot avail him against a more seri ous breach charged in the bill, to which he has not satisfactorily responded. We allude to the express and positive charge that the land is not thereto be conveyed. It is evident, from Johnson’s own state ment, that the plaintiffs in error never saw those lands at the date of the contract, and it was not till some years afterwards that they sent their agent to explore them in company with. Johnson; and it speaks not very favorably of the quality of these lands, that the region was then so inhospitable as to force their retreat for the want of accommodation. Johnson holds the affimative of this issue, as to the existence of lands sufficient to fill this contract, and ought to have proved it. He is the agent who is to do the first act, by exhibiting the lands from wliish the choice was to. be made. The complainants below went far, by the testimony adduced, to prove the negative by shewing, that none of the lands known to the witnesses, were first rate. As he has not shewn that there were any lands fit to comply with this contract, the decree of the court below is on this point also deemed erróme. *108 ous. This contract must, therefore, be set aside and rescinded ; the injunction on the judgment at law must be made perpetual; Johnson must be decreed to surrender the fourth note held on this contract of one thou - sand dollars, and to account for and refund the two thousand dollars which he has received on this contract, with legal interest from the date he received it, as well as all sums collected on his judgment at law hereby enjoined.
It only remains to adjust the payments made on the contract with Lynch and Blanton. The payments charged in the amended bill amount to g>8,527 15. It is evident from Johnson’s answer that he does not deny that these payments were made; but he contends that they were made, partof them on another contract for a moiety of 20.000 acres sold by him to Lynch: but as he has shewn no such contract, nor produced the slightest evidence of- even the existence of such tract of land, the whole sum must be charged against him on these contracts. It is however, dear, that §¿000 of this sum was paid on the last contract of Lynch and Adair which is directed to be set aside. The residue is all chargeable to the contract of Lynch and Blanton. When this latter contract is defined by theesti* mate before directed, it will be easily seen whether Lynch and Blanton have discharged that contract. If they have gone beyond it, they will be entitled to a decree for the excess. If they have not come up to it. it will be easy for the court to appropriate so much of the money decreed to be refunded as belongs to Lynch, bn the contract of 2000 acres reserved, which is annulled, as will discharge so much of the residue. And if there still should be a balance on that contract due to Johnson, after it is liquidated by the decree, Johnson, as he has no cross bill or answer supplying its place, may be left to his remedy at law to recover it.
The decree below must, therefore, be reversed with costs and the cause be remanded for a new decree in accordance with this opinion, and such further orders and decrees as equity may require.